UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| LUCUS BAKER, | ) | |
|---|---|---|
| Plaintiff | ) ) ) | |
| v. | ) | 1:10-cv-00167-JAW |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) ) ) | |
| Defendant | ) ) | |

**REPORT AND RECOMMENDED DECISION**

The Social Security Administration found that Lucus William Baker has a combination of occupationally relevant mental impairments but still retains the functional capacity to perform both past relevant work and other jobs existing in significant numbers in the national economy, resulting in a denial of Baker's application for disability benefits under Title II and Title XVI of the Social Security Act. Baker commenced this civil action to obtain judicial review of the final administrative decision, alleging multiple errors in the evaluation of his mental impairments and the degree to which they restrict his capacity to engage in substantial gainful activity. I recommend that the Court affirm. Among other topics addressed herein is a "two-hour block" discussion that calls into question prior dispositions and recommends an alternative approach to disputes arising from a Disability Determination Services consultants' shorthand reference to a claimant's capacity to maintain concentration and attention in two-hour blocks.

**Standard of Review**

The standard of review is whether substantial evidence supports the Commissioner's findings. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might

accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**The Administrative Findings**

The Commissioner's final decision is the April 8, 2010, decision of the Decision Review Board, which "found no reason" to disturb the decision of Administrative Law Judge Shortill. The Commissioner rests, in effect, on the January 5, 2010, decision issued by Judge Shortill. Judge Shortill's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. (Docs. Related to Admin. Process, Doc. No. 7-2, R. 1-3, 6-19.[1])

At step 1 of the sequential evaluation process, the Judge found that Baker meets the insured status requirements of Title II through March 31, 2010, and has not engaged in substantial gainful activity since February 28, 2005, the date of alleged onset of disability. (Findings 1 & 2, R. 11.)

At step 2, the Judge found that Baker has the following severe mental impairments: low-average intelligence; personality disorder, not otherwise specified; antisocial personality disorder; bipolar affective disorder; attention deficit hyperactivity disorder; post-traumatic stress disorder; and polysubstance abuse. (Finding 3, R. 12.)

At step 3, the Judge found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. (Finding 4, R. 12.) This finding is based on mild limitation in activities of daily

---

[1] The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 7.

living; moderate social limitation; moderate limitation in concentration, persistence, and pace; and "one or two" episodes of decompensation. (R. 12-13.)

Preliminary to steps 4 and 5, the Judge found that Baker's combined impairments result in the following residual functional capacities and limitations:

A physical capacity for work at all exertional levels;

A mental limitation to unskilled work with only occasional changes in work setting;

A mental limitation to avoid hazardous work spaces because of diminished alertness;

A mental limitation to only "occasional to frequent" contact with the public and coworkers.

(Finding 5, R. 13.) The Judge found that Baker would be able to maintain a regular schedule, provided he maintained abstinence from substances. (Id., R. 13; Finding 13, R. 18.)

At step 4, the Judge acknowledged that a testifying vocational expert opined that Baker would be able to perform past relevant work as a kitchen helper[2] and cashier. The Judge did not belabor this discussion, but the heading for this finding states that Baker "is able to perform past relevant work." (Finding 6, R. 16.)

At step 5, relying on further vocational expert testimony, the Judge found that Baker's residual functional capacity and vocational profile enabled him to engage in substantial gainful activity existing in significant numbers in the national economy. The jobs identified by the vocational expert and incorporated into the Judge's step 5 finding are laundry worker, parking lot

---

[2] The Dictionary of Occupational Titles code for kitchen helper is 318.687-010. For reasons that follow, the cashier job is not material to this recommendation.

attendant, warehouse worker, and industrial cleaner.³ (Finding 10, R. 17-18.)

Baker alleges errors in the Judge's findings at step 2, step 4, and step 5. As is typically the case, the crux of the dispute concerns the Judge's residual functional capacity findings. Baker does not discuss the jobs identified in support of the step 5 finding, but maintains that the step 5 finding cannot be sustained due to a flawed RFC finding.

## Discussion

Baker's allegations of error are discussed according to their order in the sequential evaluation scheme.

**A.     Too many mental impairments**

Baker says the Judge's step 2 analysis was "critically flawed" because it includes *too many* mental impairments (seven instead of three), including the polysubstance abuse impairment. Baker says the finding cannot be sustained because it does not line up neatly with the medical expert opinions of record. (Statement of Errors at 4-6.) It is not possible to align precisely the Judge's list of mental impairments with the findings of any particular treating, examining, or consulting expert. However, all of the impairments identified by the Judge have an origin in the various medical records. Although it appears that the Judge's list may be over-inclusive given the predominance of substance abuse and a mood/personality issue, a variety of psychiatric labels and/or mental disabilities have been contemplated by the various professionals who considered Baker's symptoms.

A review of the record reflects the presence of, essentially, an antisocial/aggressive personality or affect, combined with a history of drug abuse and criminal conduct, which happens to raise the prospect of multiple alternative diagnostic characterizations, rather than

---

3       The Dictionary of Occupational Titles codes are 361.685-018 (laundry worker), 915.473-010 (parking lot attendant), 922.687-058 (store laborer/warehouse worker), and 381.687-018 (industrial cleaner).

4

multiple independent mental impairments each imposing additional and distinct functional limitations. I cannot find reversible error in the Judge's decision to catalogue the diagnostic labels rather than attempt to pigeonhole Baker's psychiatric profile into only two or three categories. The Judge's approach was particularly safe given that more than one expert opined that there really is no significant underlying psychiatric condition present, but a history of substance abuse, antisocial behavior, social stressors, and a dulled intellect. The search for causes has revealed some difficult childhood circumstances, which introduced PTSD to the picture, and a near death from accidental drug overdose that may or may not have contributed to a degree of cognitive deficit. (See, e.g., Narcotic Treatment Discharge Summary, Ex. 3F, PageID ## 468, 470, 474-76; Community Health and Counseling Servs. Treatment Records, Ex. 6F; Gates Psych. Eval., Ex. 13F; Lester PRT, Ex. 14F.)

Baker fails to articulate how over-inclusion of impairments at step 2 was to his detriment. Baker specifically complains about the inclusion of polysubstance abuse (now in remission). However, if there is one impairment that is clearly demonstrated by the medical record, it is certainly polysubstance abuse, which resulted in an overdose and appears to present the greatest potential obstacle to maintaining employment should the condition become active again.[4] There is no discernable prejudicial error at step 2.

**B.  Lack of alignment**

Baker next complains that the Judge's RFC findings are not reliable because, like the step 2 findings, they do not line up with any of the expert opinions of record. Baker argues that the Judge strayed impermissibly into the realm of judging matters assigned to the experts.

---

[4]   The Judge noted that Baker's medical records predominantly reflect polysubstance abuse treatment and improved psychological assessments as that impairment increasingly came under control. (R. 16.) Notwithstanding its significance in terms of occupational readiness, the abuse of drugs or alcohol cannot pave the way to disability payments as a matter of law. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935.

(Statement of Errors at 6-8.) The Commissioner, on the other hand, says that the Judge reasonably selected from the expert opinions and adequately explained his RFC rationale. This challenge involves three subparts.

   *1. Unskilled work*

A disconnect exists between the Judge's RFC and the expert opinion of record because the Judge found a mental limitation to "unskilled work," which is slightly different from the RFC assessment offered by Disability Determination Services consultant Dr. Lester,[5] who found marked limitation in the ability to understand, remember, and carry out detailed instructions. (Oct. 11, 2007, Lester RFC Assessment, Ex. 15F, R. 799, PageID #829.) Dr. Lester translated these findings into an assessment that Baker can manage simple, repetitive work, but that Baker's limited intellect, learning deficits, and personality disorder preclude complex or detailed tasks. (R. 801.) The Judge did not adopt this language and found a limitation to unskilled work, a term of art that reflects a capacity for potentially more than just "simple" work, but rules out semi-skilled or skilled occupations.

The distinction between "simple" and "unskilled" is a recurring theme of many appeals addressed to mental RFC findings.[6] The facts of this particular case do not invite a protracted

---

[5] Dr. Lester offers the only expert assessment of residual functional capacity in the record, as the Judge gave no weight to another consultant's assessments of functioning. Dr. Gates's psychological evaluation offers some material findings and observations, albeit not in the form of a residual functional capacity assessment. There are no medical source statements from treatment providers.

[6] For context, it must be remembered that a claimant who has no exertional limitation, as is the case with Baker, is ordinarily *assumed* to have work capacity notwithstanding a limitation to simple tasks. See, e.g., Prescott v. SSA Comm'r, No. 1:09-cv-522-JAW, 2010 WL 4259001,*10, 2010 U.S. Dist. Lexis 112997, *31-34 (D. Me. Oct. 21, 2010) (Kravchuk, Mag. J.) (explaining that a restriction to simple work does not erode the broad occupational base that informs the Medical-Vocational Guidelines and, consequently, would not prevent a guidelines decision at step 5, particularly when there is no exertional limitation). Moreover, the Commissioner defines "unskilled work" as "generally entailing the ability to (i) understand, remember, and carry out *simple* instructions, (ii) make *simple* work-related decisions, (iii) respond appropriately to supervision, coworkers, and usual work situations, and (iv) deal with routine changes in a routine work setting." Hayes v. Astrue, 2:10-cv-42-DBH, 2010 WL 5348757, *3, 2010 U.S. Dist. Lexis 135447, *8 (D. Me. Dec. 20, 2010) (Rich, Mag. J.) (emphasis added) (citing Social Security Ruling 96-9p and Social Security Administration Program Operation Manual System ("POMS") § DI 25020.010(B)(3)).

discussion. Baker's challenge to the Judge's use of the "unskilled" restrictor is not dispositive in this case because, at both step 4 and step 5, the Judge contextualized Baker's mental limitation with findings involving occupations that qualify as "simple," in any event. Most of the jobs in question (kitchen helper, laundry worker, parking lot attendant, warehouse worker, and industrial cleaner) have a reasoning level of one or two (R1 or R2) in the Dictionary of Occupational Titles. R1 and R2 jobs qualify as "simple" as a matter of law. Little v. SSA Comm'r, No. 1:10-cv-96-JAW, 2010 U.S. Dist. Lexis 136295, *4-8, 2010 WL 5367015, *3 (D. Me. Dec. 21, 2010) (Kravchuk, Mag. J., Rec. Dec.) (affirmed in the absence of objection); Pepin v. Astrue, No. 2:09-cv-464-GZS, 2010 U.S. Dist. Lexis 98294, 2010 WL 3361841 (D. Me. Aug. 24, 2010) (Rich, Mag. J., Rec. Dec.) (same). Because the Judge based his step 4 and step 5 "not disabled" findings on simple jobs, his use of the term unskilled in his RFC finding was not reversible error.[7]

   2.   *Two-hour blocks*

Baker objects that Dr. Lester imposed a "two-hour block" restriction that should have made it into the Judge's residual functional capacity finding. (Statement of Errors at 9-10.) Dr. Lester did, in fact, assess that Baker "can be reliable and sustain 2-hour blocks at simple tasks at a consistent pace over a normal work day/week." (R. 801.) The Judge did not mention this opinion in his residual functional capacity finding or in the hypothetical he proposed to the vocational expert for purposes of the step 4 or step 5 colloquy.

To paraphrase, at oral argument the Commissioner explained that the two-hour blocks notation is much ado about nothing. According to the Commissioner's regulations, it is assumed that most jobs permit a morning, lunch, and afternoon break, in roughly two-hour intervals, and

---

[7] There is a more significant diversion between the Judge's finding that Baker can interact with the public and Dr. Lester's assessment that he cannot. However, given the jobs in question, particularly the kitchen helper job identified at step 4, this diversion does not generate a debate of material significance.

7

the two-hour block qualifier is simply a reminder that substantial gainful activity does not require constant concentration and persistence without interruption throughout the entire workday. To the Commissioner, a notation about two-hour blocks is simply a term of art, or shorthand reference, to a basic presupposition inherent in the concentration, persistence, and pace analysis. At oral argument, Commissioner's council described the concept as an "agency ground rule." This is borne out by the Administration's Program Operations Manual, available at https://s044a90.ssa.gov/apps10/, which instructs administrative claims adjudicators, when considering "stamina" for substantial gainful activity, to "[c]onsider an 8-hour workday and a 5 day work week (with normal breaks, e.g., lunch, morning and afternoon breaks) in evaluating the ability to sustain work-related functions." POMS § DI 24510.005(C)(2)(b). Similarly, the Manual explains in relation to mental limitations that the "mental abilities needed for any job" include the ability to understand, remember, and carry out simple instructions by, among other things, maintaining concentration and attention "for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)." POMS § DI 25020.010(B)(2)(a).

Like Dr. Lester, many other Disability Determination Services consultants express their RFC opinions about a claimant's ability to sustain concentration and persistence in terms of being able to do so in "two-hour blocks." When they do so, it is not always clear that they are placing a cap on a claimant's ability to concentrate so much as identifying that he can clear the regulatory "two-hour block" hurdle. This case provides a good example. Dr. Lester indicated that Baker "can be reliable and sustain 2-hour blocks at simple tasks at a consistent pace over a normal work day/week." (PageID #831.) The significance is that Dr. Lester found Baker to be capable of satisfying the mental requirements of simple work. Dr. Lester found, in effect, that

8

Baker can concentrate on and persist with simple tasks all day, five days per week, understanding that there will be regular breaks. Dr. Lester was not prescribing Baker's maximum duties or his minimum break period. He was simply alluding to a regulatory presumption about the mental demands of simple work.

The nature of the two-hour blocks qualifier as a presumptive "ground rule" is reflected in the treatment administrative law judges often accord it. For example, it is not uncommon for judges to ignore this qualifier altogether, failing to incorporate it into their RFC findings and, by extension, failing to relay it to the vocational experts for purposes of step 4 and step 5 factual development. In other cases, judges incorporate the qualifier into their RFC findings but treat it as having no significant weight, finding the claimant "not disabled" based on application of the Guidelines at step 5, without relying on testimony from a vocational expert. Although this Court has previously found the two-hour block language to be a factor in remanding cases involving application of the Guidelines at step 5, it has done so in cases involving additional and more significant nonexertional restrictions. See Conley v. Astrue, 08-202-P-S, 2009 U.S. Dist. Lexis 7658, *5-7, 2009 WL 214557, *203 (D. Me. Jan. 28, 2009) (presenting sedentary work restriction, no public contact, and simple and repetitive tasks); Prescott v. Astrue, Civ. No. 09-23-B-W, 2009 U.S. Dist. LEXIS 94783, *10, 2009 WL 3148731, *3 (D. Me. Sept. 30, 2009) (allowing application of the Guidelines where claimant's exertional capacity was unlimited, detailed was precluded, and public contact was restricted, but describing a two-hour block notation as a "significant further limitation" that might have changed the outcome, if present) (distinguishing Conley).[8] To my knowledge, there is no case in this District or any other

---

[8] In Conley there is a strong appearance that remand would have been ordered in the absence of any dispute over the two-hour block qualifier, and that the Court included the two-hour block issue in the list of remand factors simply to bolster its decision. It may be that the aggregation of this factor added no more than a feather's weight to the scale.

suggesting that a restriction to simple tasks, two-hour blocks of concentration, would not properly resolve by application of the Guidelines at step 5, assuming no other non-exertional restrictions.

This Court has also relied on the two-hour block qualifier to remand a case decided at step 4. However, in that case, the administrative law judge failed to consider the demands of the claimant's past relevant work as a flagger, described as requiring the claimant to stand all day without rest. The Court reasoned that the judge failed to adhere to Social Security Ruling 82-62, because that Ruling required the judge to ensure that there was a fit between the demands of the past work and the claimant's RFC. Significantly, the record contained evidence to the effect that the past relevant work would not allow for any break. Bartlett v. Barnhart, Civ. No. 05-23-B-W, 2005 U.S. Dist. LEXIS 16330, *5-13, 2005 WL 1923518, *4 (D. Me. Aug. 9, 2005) (Cohen, Mag. J., Rec. Dec.). In other words, the claimant persuasively interjected the issue at the administrative hearing and there did not appear to be a reliable basis for finally resolving the disability question at step 4, on the basis of one particularly demanding job.[9]

The instant case is different. Here the decision is supported at step 4 and step 5 with testimony from a vocational expert about jobs classified in the Dictionary of Occupational Titles. There is no reason to assume that the DOT does not operate on similar assumptions about periodic breaks. Baker had the assistance of an attorney at his hearing. The Judge permitted counsel to question the vocational expert and counsel was an active participant at the hearing. (R. 54-58, 64-67.) Presumably, counsel was as familiar with the record as the Judge, yet counsel never suggested that Dr. Lester's description of a capacity to sustain concentration and attention over two-hour blocks might meaningfully erode the unskilled work base or preclude any of the

---

[9] There was a more problematic issue in Bartlett related to a restriction on public interaction, insofar as the flagger position required interaction with the travelling public throughout the day. So, once again, the two-hour block issue presented as an add-on argument, rather than as the primary basis for remand.

occupations discussed by the vocational expert at the hearing. There is an expectation that counsel will explore these concerns with the vocational expert at the hearing, not leave such matters to technical challenges before the courts. Faria v. Comm'r of Soc. Sec., No. 97-2421, 1998 U.S. App. LEXIS 26013, *2, 1998 WL 1085810, * 1 (1st Cir. Oct. 2, 1998) (unpublished) ("When a claimant is represented, the ALJ[ ] should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored.") (citations and internal quotation marks omitted).

In the particular context of this recurring "two-hour block" theme, I agree with the Commissioner that there is no error in operating under the assumption—for purposes of RFC, step 4, and step 5 of the sequential evaluation process—that a DDS consultant's assessment of a capacity for concentration in two-hour blocks merely indicates that a claimant crosses the threshold for having a residual functional capacity for unskilled work, without imposing a cincture on the claimant's mental capacity that must be explained away by the Judge if it is not incorporated into an RFC finding. This approach corresponds with the treatment given to the "two-hour block" notation by DDS consultants and administrative law judges, generally, and a contrary approach inappropriately turns an innocuous, internal claims-processing guideline into a *de jure* remand trap. If the social security plaintiffs' bar wishes to elevate a two-hour block notation into a remand-worthy medical finding, it should develop vocational expert testimony to establish the materiality of such a notation and make that position clear to the administrative law judge. In this case, hearing counsel let the issue pass.

   3.    *Borderline intellectual functioning*

Dr. Gates performed intellectual testing and assessed Baker's full-scale IQ as 81, with scores of 86 and 88 in verbal comprehension and working memory, respectively. Dr. Gates

characterized Baker as alert and oriented, with a "presentation style" of low-average intellect. (R. 782, PageID # 812.) Based on Dr. Gates's evaluation, Dr. Lester found borderline intellectual functioning and learning disabilities to be occupationally relevant impairments upon application of a psychiatric review technique. (R. 785-86, PageID #815-16.) Although the Judge agreed by including these impairments in his step 2 findings, Baker complains that he never translated this finding into his residual functional capacity assessment. (Statement of Errors at 13.) However, the RFC assessment Dr. Lester performed in conjunction with his PRT review offers an RFC assessment tied to these very impairments ("simple") and the Judge's RFC findings ("unskilled/decreased alertness") do not materially digress from Dr. Lester's for reasons explained in other portions of this recommended decision.

**C.     Past Relevant Work as a Kitchen Helper and Diminished Alertness**

The past relevant work of significance to this proceeding is the kitchen helper job, because the other job, cashier, has a reasoning level of 3, which would potentially compromise what was said, above, concerning the "unskilled" versus "simple" work distinction. Baker argues that his need to avoid hazards on account of reduced alertness is incompatible with the kitchen helper occupation. Baker faults the Judge for not "examin[ing] the work functions involved in [his] former kitchen helper job insofar as actual hazards were involved." (Id. at 10.) Baker also raises a question about whether his past relevant work was performed at the level of substantial gainful activity. However, he restricts this argument to the cashier job. (Id. at 11.) As far as the kitchen helper job is concerned, Baker relies exclusively on the argument that it should be precluded as too dangerous for him, citing Overman v. Astrue, 546 F.3d 456, 463-65 (7th Cir. 2008), and other cases addressed to obvious or apparent conflicts between a vocational expert's testimony and definitions supplied in the Dictionary of Occupational Titles.

The Court should reject this argument. First, the Judge spoke in terms of hazards, not common equipment, implements and ordinary obstacles Baker would be attuned to from working in a kitchen, such as knives and other blades, fryers, meat grinders, pots of scalding water, errant mop buckets, or even swinging doors. Second, Baker's kitchen hazard argument is not supported by the "kitchen helper (hotel & rest.)" definition supplied in the Dictionary of Occupational Titles (#318.687-010), so the <u>Overman</u> line of authority is of no assistance to him. Counsel should refrain from making such an argument unless he intends to quote the allegedly conflicting language. In the absence of such development, it would be fair to treat the issue as waived.

Alternatively, if Baker's hearing counsel felt there were "hazards" inherent in kitchen work, he could have explored the issue with the vocational expert. As the record stands, the vocational expert heard the hypothetical of a worker who should avoid hazards, yet still testified that such a person could work as a kitchen helper. (R. 61-62.) That is substantial evidence in support of the Judge's step 4 finding.

The more salient question is whether Baker's kitchen work in 2004 qualifies as past relevant work. However, Baker does *not* argue that it cannot be so viewed. (Statement of Errors at 11-12.) It would be fair to treat this issue as waived for insufficient development. For the Court's convenience, the issue is briefly addressed.

At step 4 of the sequential evaluation process, the claimant bears the burden of demonstrating that his or her RFC will not allow for performance of any "past relevant work," assuming that any such work is available to consider. Past relevant work refers to "substantial gainful activity" performed by a claimant within the past 15 years for a long enough time for the claimant to learn to do it. 20 C.F.R. §§ 404.1560(b), 416.960(b). Substantial gainful activity is work activity involving significant physical or mental effort, of a kind that is usually performed

13

for pay or profit. Id. The evaluation of whether past work activity was substantial and gainful typically turns on the measure of earnings derived from the activity. Id. §§ 404.1574, 416.974. Baker worked in the kitchen job for six months in 2004, long enough to learn the job. In 2004, the regulatory minimum for substantial gainful activity was $810 per month. POMS § DI 10501.015(B). The evidence adduced at hearing indicates that Baker made $5197 over six months, which means that the kitchen work qualifies as past relevant work. (R. 53-54.)

**D.  Other Work in the National Economy**

In light of the discussion of past relevant work, it is not necessary to review the Judge's step 5 findings. I do note, however, that the foregoing discussion is consistent with a finding that there are other so-called "simple" jobs that would not require public interaction, expose Baker to hazards, or otherwise surpass Baker's RFC, including laundry worker, warehouse worker, and industrial cleaner.

**Conclusion**

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court AFFIRM the Commissioner's final decision and enter judgment in favor of the Commissioner.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

March 31, 2011